IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> RICKEY HERNANDEZ ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> DONALD HULICK, ) <br> ) <br> Defendants. ) | No.   07 C 848 <br><br> Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Rickey[1] Hernandez has brought a pro se petition for habeas corpus relief pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, seeking to overturn his state conviction for first degree murder. For the reasons set forth below, the petition is denied.

## **BACKGROUND**[2]

In the early morning hours of December 12, 1997, Jeffrey Stevens answered a knock at the door of the apartment he sometimes shared with his on-and-off girlfriend, Rhonda Sproats, the couple's two children, and Rhonda's daughter from a previous relationship. He was met with a single gunshot to his left cheek, fired at point-blank range. Stevens fell to the floor immediately and died within hours. On March 14, 2001, following a four-day jury trial in the

---

[1] Mr. Hernandez's first name generally appears as "Ricky" in the pleadings before this court, but "Rickey" in both the state court proceedings and the Illinois Department of Corrections database. This court adopts the spelling used in the state proceedings.

[2] This factual summary is based on the court's review of the state court record of proceedings and is consistent with the Illinois Appellate Court's more detailed factual summary in People v. Hernandez, No. 1-01-2023 (Ill. App. Ct. 2003) (undated).

Circuit Court of Cook County, petitioner was convicted of first degree murder for Stevens's killing. A short summary of the evidence presented at trial follows:

Rhonda's mother, Betty Sproat,[3] testified that after years of observing signs that Stevens physically abused her daughter, she decided to take matters into her own hands in October of 1997. Betty decided to have Stevens beaten up, and she and her husband Ken Sproat[4] enlisted petitioner–whom they had met at a ceramics class–to do the job. Betty testified that after discussing the matter with petitioner's girlfriend Lola–also a student in the ceramics class–Betty and Ken went to petitioner's apartment on two separate occasions to discuss having Stevens beaten. At the conclusion of the second meeting, petitioner said he would "take care of it."

A week or so later, Ken had a change of heart and decided to call off the plan. Ken told petitioner to stand down. In the meantime, however, Betty learned that Stevens had also begun abusing Rhonda's eldest child. Betty was fed up. Betty decided not only to reinstate the plan but to up the ante: Betty arranged another meeting with petitioner, and this time she told petitioner she wanted Stevens dead. Betty testified that petitioner agreed to kill Stevens in exchange for "whatever is in your heart." After the killing, however, petitioner demanded that Betty pay him $30,000. Betty stated that over the course of their dealings, she and her husband paid petitioner $150, then $1200, then $5000 (in a sham purchase of a car), all in exchange for killing Stevens.

---

[3]Betty testified at trial pursuant to an agreement with the State, under which Betty pled guilty to conspiracy to commit murder and received a ten-year sentence in exchange for her truthful testimony.

[4]Ken also testified pursuant to an agreement with the State, under which he would not be charged in the case in exchange for his testimony.

Several other witnesses also testified for the State: Ken Sproats generally corroborated Betty's testimony about the agreement with petitioner and the payments Betty and Ken made to him. Darrell Tubbs[5] testified that he was neighbors with petitioner in the months leading up to Stevens's killing. On the night of December 12, 1997, he accompanied petitioner to Stevens's apartment, knocked on the door and asked Stevens to open up, then saw petitioner shoot Stevens in the face. Lola testified that she was present when Betty and Ken came to petitioner's apartment (which she shared with him at the time) to discuss beating Stevens, and that she witnessed several conversations among Betty, Ken, petitioner, and Tubbs regarding the plan. Julie Jones,[6] Tubbs's fiancé, testified that on the night of December 11, 1997, petitioner, Tubbs, and Fernando Davila[7] together left the apartment she and Tubbs shared; that the three men returned to the apartment about an hour later and proceeded to clean a gun with alcohol and cotton swabs; and that the following day, she observed red traces she believed may have been blood on the rim of the alcohol bottle they had used. Two police officers testified regarding the investigation of the crime. The State concluded its evidence with the stipulated testimony of several additional witnesses. Petitioner did not testify at trial.

The jury found petitioner guilty of first degree murder. After his conviction, petitioner moved unsuccessfully for a new trial. On May 24, 2001, petitioner was sentenced to an extended

---

[5]Tubbs also testified pursuant to an agreement with the State, under which he would not be charged for Stevens' murder and would receive a reduced sentence for other charges pending against him in exchange for his truthful testimony, consistent with his previous written statements.

[6]Jones testified in exchange for the prosecutor's promise that she would receive probation in connection with unspecified charges pending against her.

[7]Davila was also charged in Stevens's murder and was tried in a separate but concurrent bench trial.

term of 80 years' imprisonment. He then appealed both his conviction and sentence, raising the following claims: (1) the trial court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), when it heard evidence relating to a pending attempted murder charge at sentencing; (2) the trial court denied him the right to an impartial jury when it failed to dismiss a tainted juror; (3) the trial court erroneously admitted certain hearsay statements into evidence; (4) the trial court erred in giving an Illinois pattern jury instruction on circumstantial evidence; (5) the State failed to prove petitioner guilty beyond a reasonable doubt; and (6) petitioner was denied effective assistance of counsel because (a) at trial, his attorney failed to cross-examine certain State witnesses, and (b) at sentencing, his attorney failed to present any witnesses or evidence in mitigation.

The Illinois Appellate Court affirmed petitioner's conviction and sentence in People v. Hernandez, No. 1-01-2023 (Ill. App. Ct. 2003) (undated order) ("Hernandez"). Petitioner then filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on June 4, 2003.

On November 5, 2003, petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel. Specifically, petitioner claimed that his attorney coerced him not to testify and failed to retain mental health experts to evaluate his mental capacity. The trial court dismissed the post-conviction petition as frivolous on December 12, 2003. Petitioner appealed the dismissal but raised unrelated issues on appeal. In the Appellate Court, petitioner claimed that he been improperly convicted on multiple counts for a single murder (intentional and knowing murder), and he sought to vacate the knowing murder conviction. Petitioner additionally sought to correct the mittimus to reflect that conviction.

In a summary order of June 14, 2006, the Appellate Court held that petitioner had been properly convicted of only one count of murder. See People v. Hernandez, No. 1-05-1791, at 1 (Ill. App. Ct. 2006). Because the Appellate Court agreed, however, that the mittimus

4

erroneously reflected a two-count conviction, it amended the mittimus. See id., at 2. It does not appear that petitioner sought further appeal of the issues raised in his post-conviction proceedings.[8]

Petitioner now seeks habeas relief in this court, alleging the same six claims he asserted on direct appeal. He also reasserts the ineffective assistance of counsel claims he raised in his post-conviction petition but did not appeal. For the reasons explained below, none of petitioner's claims entitles him to a writ of habeas corpus.

## DISCUSSION

Under the AEDPA, a federal court may not grant a state prisoner habeas relief unless the adjudication by the highest state court to address the petitioner's claims on the merits, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Smiley v. Thurmer, 542 F.3d 574, at 580 (7th Cir. 2008) (citing 28 U.S.C. § 2254(d)). Accordingly, federal courts are not authorized to grant habeas relief based on errors of state law, see Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citations omitted); Kurzawa v. Jordan, 146 F.3d 435, 440 (7th Cir. 1998). In addition, factual determinations made by state courts must be objectively unreasonable–not merely erroneous–to warrant habeas relief. See Williams v. Taylor, 529 U.S. 362, 411 (2000).

AEDPA also requires state prisoners to exhaust state remedies before seeking federal

---

[8]In his petition before this court, in response to the question regarding appeals of Appellate Court decisions in collateral proceedings, petitioner stated "Petitioner has none of this information." The record does not reflect any further appeals.

5

habeas relief. 28 U.S.C. § 2254(b); see also O'Sullivan v. Boerckel, 526 U.S. 838, 843-45 (1999). Inherent in the exhaustion obligation is the petitioner's duty to provide the state courts a full and fair opportunity to review all of his or her federal claims. See Malone v. Walls, 538 F.3d 744, 753 (7th Cir. 2008). On habeas review, then, a federal court may only entertain the merits of constitutional claims that were presented throughout "one complete round of the State's established appellate review process." O'Sullivan, at 845. All other federal claims are procedurally defaulted, see Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004), while state law claims are outside the scope of federal habeas review entirely. See Estelle, at 67.

Because several of petitioner's claims fail based on the above principles, this court is precluded from reaching their merits.

Evidentiary and Jury Instruction Claims

Throughout the state court proceedings, and even in the habeas petition itself, petitioner consistently presented his evidentiary claim challenging the admission of unspecified hearsay statements as an error of state law, and indeed the Appellate Court resolved the claim on state law grounds. The Appellate Court's resolution of that claim, therefore, is outside the scope of habeas review by a federal court. See Estelle, at 67; Kurzawa, at 440.

Moreover, even if petitioner could be deemed to have fairly presented, on direct appeal, a federal claim based on evidentiary error,[9] the fact that the Appellate Court rejected the claim on independent and adequate state law grounds precludes review of its judgment by this court. See Coleman v. Thompson, 501 U.S. 722, 731 (1991). The Appellate Court held that petitioner had waived his evidentiary claim by failing to identify the contested statements (an independent and

---

[9]It is clear, under the standard of Verdin v. O'Leary, 972 F.2d 1467, 1475 (7th Cir. 1992), discussed below, that no such federal claim was presented, and nothing in this opinion should be construed as suggesting the contrary. The purpose of this counterfactual hypothetical is merely to illustrate that multiple barriers prevent the court from entertaining the merits of this claim.

6

adequate procedural ground under state law), then went on to examine and reject the claim on its merits, again under Illinois law. Accordingly, this court may not disturb the Appellate Court's judgment. Id.

Petitioner's challenge to the jury instruction relating to circumstantial evidence fails for similar reasons. Throughout the state court proceedings, petitioner presented his claim as an error of state law, and the Appellate Court rejected the claim on state law grounds. Although petitioner alleges, in his habeas petition, that the jury instructions deprived him of his right to a fair trial, nothing in his direct appeals suggested that his claim had any constitutional basis.

To ascertain whether a federal claim was fairly presented in state court proceedings, the Seventh Circuit looks at four factors: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." Ellsworth v. Levenhagen 248 F.3d 634 (7th Cir. 2001) (citing Sullivan v. Fairman, 731 F.2d 450, 454 (7th Cir. 1984) and Verdin v. O'Leary, 972 F.2d 1467, 1476 (7th Cir. 1992).

The first two factors weigh against petitioner: in his state court proceedings, petitioner cited no federal cases or constitutional analysis in support of his claim, nor indeed did the state cases on which petitioner relied. The third factor also militates against petitioner, since the allegation that he was denied a fair trial–the only hint that his claim rests on constitutional grounds–did not surface until his habeas petition.[10] Finally, the fourth factor also hurts petitioner rather than helps him, since claims based on jury instructions rarely give rise to constitutional

---

[10]This is not to suggest that the mere allegation of an unfair trial would necessarily have been sufficient to alert the state courts to the federal nature of his claim. Verdin, at 1476.

7

claims. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). In short, there is simply no basis for concluding that petitioner raised a constitutional claim in his challenge to the trial court's jury instruction in state proceedings. Accordingly, that claim is procedurally defaulted. See Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004).

Petitioner cannot escape these fatal flaws by claiming that they are the result of ineffective assistance of his appellate counsel. It is true that attorney error amounting to ineffective assistance of counsel can constitute cause to set aside procedural default, see Wrinkles v. Buss, 537 F.3d 804, 812 (7th Cir. 2008). But a habeas petitioner seeking to excuse procedural default with a claim of ineffective assistance of counsel must demonstrate, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), that his or her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Wrinkles, at 812-13.

Here, petitioner asserts that the failure to allege constitutional violations was due to his appellate counsel's ineffectiveness. As discussed in more detail below, under Strickland a petitioner must establish first that counsel's performance was deficient, then show prejudice as a result of the deficiency. See Malone v. Walls, 538 F.3d 744, 750 (7th Cir. 2008). With respect to the first prong, petitioner must overcome a strong presumption that counsel's actions reflected sound strategy. See Strickland, at 689.

In the context of appellate counsel's failure to raise a particular claim on direct appeal, petitioner must show that his counsel "omitted raising a significant and obvious issue without a legitimate strategic purpose." Franklin v. Gilmore, 188 F. 3d 877, 884 (7th Cir. 1999). Moreover, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Mason v. Hanks, 97 F.3d 887, 893

8

(7th Cir. 1996). In other words, petitioner would have to show that the evidentiary and instructional errors he alleges raised stronger constitutional claims than the state claims he actually raised based on the same set of facts.

Petitioner has not made such a showing here. Claims challenging evidentiary rulings generally arise under state law, and they take on a constitutional dimension only where a petitioner can establish that "the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001). The Appellate Court's ultimate finding that the trial court made no evidentiary error at all, much less one of constitutional magnitude, undercuts any contention that the decision by petitioner's appellate counsel not to raise a constitutional claim in the first instance was objectively unreasonable.

Much the same reasoning supports the conclusion that appellate counsel was not ineffective for failing to raise a constitutional claim based on the jury instructions. Nothing in the nature of petitioner's claim suggests that it would have met with greater success as a constitutional claim than it did as a state law claim. Accordingly, appellate counsel's decision not to bring a constitutional claim does not support a finding of ineffective assistance.

In sum, petitioner's allegations of ineffective assistance of appellate counsel are insufficient to overcome the defects in petitioner's evidentiary and instructional claims of error.

Ineffective Assistance of Trial Counsel Claim

Petitioner also asserts ineffective assistance of counsel as an independent claim. This claim, which the State concedes is properly before this court (and thus may be examined on the merits), can be resolved without extended discussion.

As set forth above, a federal court cannot disturb a state court's judgment on habeas review unless the state court adjudication resulted in a decision that was contrary to, or unreasonably applied, federal law as determined by the Supreme Court, or was based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d).

In this case, the Appellate Court clearly applied the appropriate Strickland standard. It first considered petitioner's argument that he was denied the effective assistance of counsel during the cross-examination of certain State witnesses. After correctly identifying the two-prong Strickland standard (i.e., defective performance and prejudice), the Appellate Court concluded that petitioner had not met either prong. It held first that petitioner failed to overcome the presumption that trial counsel's decision not to cross-examine certain witnesses and to stipulate to certain testimony was sound trial strategy. The Appellate Court went on to find that petitioner had not demonstrated "that the outcome of the trial would have been any different" but for these decisions.[11] (No. 1-01-2023, at 20)

The Appellate Court similarly rejected petitioner's claim that his counsel was ineffective by failing to present mitigation evidence and simply restating facts in the presentence report at his sentencing hearing. The Appellate Court first determined that petitioner's characterization of his counsel's performance was not supported by the record (a finding with which this court agrees). Counsel did, in fact, present facts beyond those contained in the presentence report. The Appellate Court then held that because petitioner had not identified any additional evidence

---

[11]Although Strickland requires only a *reasonable probability* that the outcome would have been different, the Appellate Court's finding in this case that "the defendant has not shown how the outcome of the trial would have been any different" properly applied the Strickland standard regardless of the omission of the words "reasonable probability" from its ultimate holding. See Stanley v. Bartley, 465 F.3d 810 (7th Cir. 2006).

that would have affected his sentence, he failed to demonstrate that he was prejudiced by his counsel's allegedly deficient performance.

Finally, in his reply,[12] petitioner reasserts two additional ineffective assistance of counsel claims that he initially raised in his post-conviction petition but did not reassert either on appeal of that petition's denial, on direct appeal of his conviction and sentence, or in his original petition for habeas relief. In these claims, petitioner alleges that his trial counsel was ineffective for coercing him not to testify and for failing to request a mental fitness hearing. Both of these claims are procedurally defaulted because the "operative facts" underlying these claims were not presented to the Appellate Court. Verdin, at 1474 ("for a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted to that court.") (citation omitted). In any event, petitioner has not asserted any evidence to suggest he was actually prejudiced by these alleged deficiencies.

In sum, the Appellate Court's resolution of certain of petitioner's ineffective assistance of counsel claims was consistent with governing Supreme Court precedent. The remaining claims, which were not fairly presented to the Appellate Court, are procedurally defaulted and appear to lack merit in any event. For at least these reasons, petitioner is not entitled to habeas relief based on alleged ineffective assistance of counsel.

Tainted Jury Claim

---

[12]Docket No. 20, captioned "Petitioner's Opposition to Motion to Dismiss," responds to arguments raised by the State, and may properly be understood as a reply. In Docket No. 22, captioned "Supplemental Memorandum," petitioner reiterates certain points and asserts additional arguments in support of his claims. The court has considered both of these pleadings as well as petitioner's original habeas petition in evaluating his claims.

Petitioner asserts that he was denied a fair trial because the trial court declined to dismiss a juror who reported that during the trial, an unknown person drove by her house slowly and stared at her. This claim also fails to support habeas relief.

In the state court proceedings, petitioner asserted both state and federal bases for relief. Citing Remmer v. United States, 347 U.S. 227 (1954), plaintiff claimed that a third party's contact with a juror was presumptively prejudicial. Petitioner argued that because the trial court failed to make an adequate inquiry into the extent to which the drive-by episode affected the impartiality of the individual juror and jury as a whole, its decision not to dismiss the juror or declare a mistrial and empanel a new jury was error.

The Appellate Court considered and rejected petitioner's arguments. The Appellate Court noted that "once a juror has been selected and sworn, it is within the trial court's discretion to dismiss the juror and replace him or her with an alternate," and that "the burden of establishing that a juror has a disqualifying state of mind is on the party challenging the juror." Hernandez, No. 1-01-2023, at 11. After reviewing the portion of the transcript that reflected the trial judge's examination of both the individual juror and the jury as a whole and analyzing pertinent Illinois law, the Appellate Court concluded that "the proper procedures were employed in the instant case and therefore find[s] that the trial court did not err in failing to excuse the juror or declare a mistrial." Hernandez, No. 1-01-2023, at 13. The Appellate Court specifically noted that the defendant "was in no way prejudiced by the incident." Id.

That the Appellate Court declined to address petitioner's citation to Remmer is of no moment. Although the Appellate Court relied on state law, its conclusion is not inconsistent with Remmer. At issue in Remmer was a remark by a third party suggesting to a juror that the juror could profit by bringing in a verdict favorable to the defendant. The Supreme Court held that because third-party contact "with jurors during a trial about the matter pending before the

12

jury" is presumptively prejudicial, the trial court must take measures to ensure that no actual prejudice resulted. Remmer, at 229-30. In the instant case, it was not clear that the third party "contact" with the juror was in related to the matter pending. Moreover, the Appellate Court found on the basis of the record before it that the trial court's investigation was appropriate. Petitioner is not entitled to habeas relief on this claim under § 2254.

Insufficiency of Evidence Claim

Petitioner's claim that the evidence was insufficient to convict him was rejected by the Appellate Court on the merits. Again relying on state law, the Appellate Court held that the relevant inquiry was "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Hernandez, No. 1-01-2023, at 16 (citing People v. Brooks, 187 Ill.2d 91, 132 (Ill. 1999). This standard mirrors the standard articulated by the Supreme Court in Jackson v. Virginia 443 U.S. 307, 319 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original). The Appellate Court both identified and reasonably applied the appropriate standard. Moreover, this court's independent review of the record reveals that the Appellate Court's determination of the relevant facts was not unreasonable in light of the evidence presented. There is no basis under § 2254 for this court to reverse the Appellate Court's adjudication of this claim.

*Apprendi* claim

Finally, petitioner claims that his extended term sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000), because the trial court considered factors at sentencing that had not been submitted to the jury, and that these factors resulted in an extended sentence. The Appellate Court rejected petitioner's claim on the ground that Illinois law expressly permits an

13

extended term sentence for first degree murder when the defendant has been previously convicted of certain crimes, including attempted first degree murder, in the preceding ten years. See Hernandez, No. 1-01-2023, at 22. The Appellate Court noted that Illinois courts have consistently found recidivist statutes such as the one the trial court applied to be consistent with Apprendi. Petitioner does not contest that he is within the purview of the recidivist statute. He argues, however, that the extended sentence was the result of the trial court's consideration of a pending charge.

The Appellate Court acknowledged that in addition to evidence of his prior conviction, the trial court also heard evidence relating to a pending charge against petitioner. The Appellate Court made a factual determination, however, that petitioner's extended term sentence was based not on the evidence relating to the pending charge, but rather upon petitioner's previous conviction for first degree murder. Because that factual determination was not unreasonable, this court may not disturb it on habeas review. 28 U.S.C. § 2254.

## CONCLUSION

For the reasons set forth above, petitioner's petition for a writ of habeas corpus is denied.[13]

**ENTER:** November 3, 2008

_____
**Robert W. Gettleman**
**United States District Judge**

---

[13]Petitioner's pending motion for production of trial transcripts (Docket No. 23) is also denied, as is his request for an evidentiary hearing.

14